Mr. Justice Hagner
delivered the opinion of the Coúrt:
The complainant, Rose Bailor, alleges that her husband, Henry Bailor, in July, 1878, purchased a lot from the defendant, Daly, paid him a small sum in cash and gave his eleven promissory notes, payable at periods of six months, for the residue; and on the same day executed a deed of trust to Dickson, as trustee, to secure the payment of these notes; that Bailor made payments from time to time, and at the time of his death had paid nearly all the notes; and that only one was then unpaid; that Bailor died intestate and childless, and that she remained in the possession of *176 the house; that Daly, after her husband’s death, made various deceptive statements; sometimes that her husband had paid entirely for the property and that she should receive title to it, and at other times,'that very little was due; that she made efforts to raise money to pay off whatever balance was due, and made payments to Daly from time to time; but suddenly, without notice to her, and in violation of his promise, Daly sold the property; that there was no proper advertisement; that the lot sold for a grossly inadequate price; that Daly, the trustee, and the purchaser, Burke, colluded to defraud her and caused the property to be struck off for an inadequate sum. She prays that the sale be set aside; that the property may be restored to her, and she be repaid the sums she paid to Daly, which she believes were paid over and above what was really due. The charge is one of fraud in fact, in the very strongest terms.
The parties thus impeached answer, and all deny in the most positive manner the truth of every word of that charge Daly declares he made no such statements to her as are charged; that she did pay him $71, which discharged one of the notes, with interest, and also a small balance due on a previous note; but the last two -notes were entirely due and had never been reduced in any way; that he never knew Burke until the afternoon of the day of sale; that he had no idea of buying the land, and tried his best to make it sell for the largest sum he could, and employed a person to bid for it. The answer of the trustee is equally explicit. He insists he did nothing but his duty; that he was anxious to go to Europe, but was, unwillingly, detained by this business, and never had. seen Burke prior to- the sale. Burke, the purchaser, declares he was in the habit of keeping a lookout for purchases, to invest his money wherever he thought h§ could get a bargain; that he knew nothing about this property or the parties until he read the advertisement in The Star, and in consequence of that notice he attended the sale and purchased the lot, and believes he *177 gave a fair price for it. He further asserts that to his knowledge he never saw Daly, nor the trustee, until after the sale.
These answers conclusively dispose of the charge of collusion and fraud, unless their force is destroyed by the evidence. But the complainant has failed to sustain the averments of her bill by the evidence; her oWn testimony does not support her allegations, and the witnesses whom she produced testified only to immaterial matters. The evidence given by a number of witnesses on the part of the defendants confirm the statements in the answers. The charge of fraud, in fact, having thus failed, there can be no relief under the prayer for general relief, according to the familiar principle stated in Clark vs. Krause, 2 Mackey, 559, which was laid down by the Supreme Court in Eyre vs. Potter, 15 How., 42.
But as far reaching as this principle appears to be, it should not prevent us from considering other allegations in the bill of such serious irregularities as would, if true, establish that there was no legal sale at all.
One of these is the want of proper notice. The property was advertised in The Evening Star on the 19th, 20th, 22d, and 23d of June, 1885, and the sale took place on the day last named. The notice was rather scant; but the property was a small lot, in a very unattractive locality; and in view of the serious expense of advertisements, the trustee may have been justified in thinking that would be a sufficient expenditure of money. There is nothing to show there was any unusual absence of persons at the sale, the proof showing fifteen or twenty persons were in attendance. Nor is there anything to show that the lack of notice caused loss to any one. There is nothing, therefore, in the allegation of want of proper notice.
Another complaint was that the auctioneer, on the day of the sale, set up a flag on the fence in front of the adjacent house. There were two small houses lying together, with a fence common to both, and the person who was sent down *178 to put up the flag placed it front of the house adjoining. Burke, the purchaser, who went to examine the property, entered the wrong house, misled by the flag. But he was instantly told of his mistake by the inmates; and the blunder was rectified as soon as the auctioneer came on the ground. No other person appears to have been misled, and there is nothing in the circumstance to justify the court in setting aside the sale on this ground.
The next objection is inadequacy of price. The land was bought by Bailor for $600. It was stated he had improved it to some extent, but the testimony on that subject is by no means clear, and there are many witnesses who say it was not in as good condition at the time of the sale as it was when he bought it. It sold for $370, and the last bid was by a man named Williams, who was carried there by the beneficiary, Daly, for the purpose of running up the property. It was apparent that Daly did not want the property as he tried to make it sell for as much as he could. The familiar doctrine as to inadequacy of price is, that before a salé will be set aside for inadequacy of price alone, it must appear that the price was so grossly inadequate as to shock the moral sense, and create at once upon its being mentioned a suspicion of fraud.
There is nothing to prove such gross inadequacy; and particularly in connection with the fact that after the complainant found fault with the sale, Burke offered her the property for $75 more than he gave; the additional sum representing what he had paid for searching the title and other expenses. That would have amounted only to $445; and if the charge of gross inadequacy were well founded, we must suppose there would have been no hesitation on her part in availing herself of the offer; but the complainant did not raise the money.
A further question was discussed whether such a suit could be maintained by the widow, who, it is insisted, has no standing in court. The purchaser executed the deed of *179 trust on the day he received a deed of the property. He, therefore, had but the instantaneous seizen of the land that would not entitle his widow to dower at all. Besides she actually in the deed of trust relinquished her dower, if she had any. After the death of her husband his brother, Samuel Bailor, representing himself as the sole heir of the deceased, on the 18th day of July, 1885, made a quitclaim deed of all his-interest to the plaintiff, and she comes into court in November, 1886, under her title as grantee and assignee of the brother, to set aside the sale an.d the conveyance by the trustee to the purchaser, in June, 1885, one month before the quit-claim deed.
Her right to sustain such a bill is more than questionable. Assignees of choses of action are recognized more freely in equity than at lawq but there are limits to such recognition. Some of the assignments the courts will not recognize are described in Section 1040, h, 2 Story’s Eq. (note 1).
“ So an assignment of a bare right to file a bill in equity for a fraud committed upon the assignor, would be held void as contrary to public policy, and as savoring of the character of maintenance; so, a mere right of action for a tort is not, for the like reason, assignable. Indeed, it has been laid down as a general rule, that, where an equitable interest is assigned, in order to give the assignee a locus standi in judicio in a court of equity, the party assigning such right must have some substantial possession, and some capability of personal enjoyment, and not a mere naked right to overset a local instrument, or to maintain a suit.”
Lord Abinger in Prosser vs. Edwards, 1 Yonge & Cole, 481, 496-499, says:
“My present impression is that such a claim could not be sustained in equity, unless the party who' made the assignment joined in the prayer to set it aside. In such a case a second assignment is merely that of a right to file-a bill in equity for a fraud; and I should say that some authority is necessary to show that a man can assign to another a right to file *180 a- bill for a fraud committed upon himself. * * * In the present case it is impossible that the assignee can obtain any benefit from his security, except through the medium of the court. He purchases nothing but a hostile right to bring parties into a court of equity as defendants to a bill filed for the purpose of obtaining the fruits of his purchase. * * * It is a rule, not of our law alone, but of that of all countries, that the mere might of purchase shall not give a man a right to legal remedies. The contrary doctrine is nowhere tolerated, and is against public policy. All our cases of maintenance and champerty are founded upon the principle that no encouragement should be given to litigation by the introduction of parties to enforce those rights which others are not disposed, to enforce.”
In this case the assignor, Samuel Bailor, did not file a bill to set aside the sale, but it is his assignee who sues, by virtue of that assignment. No right of action is given in the assignment; if such right passed it was merely by implication. It may well be questioned whether she would have any standing in the court, except for another consideration appearing in the case. It is a familiar principle that where the. validity of a sale by a conventional trustee is in litigation, the court may assume jurisdiction of the accounts of the trustee, sometimes compelling him to give bond if necessary. It appears there was a balance of about $180 remaining in the trustee’s hands after he had satisfied Daly’s debt and the expenses of sale. The widow claimed it all; but a claim was also made on the trustee by persons representing themselves as children of a sister of Henry Bailor for one-half of this balance, and the trustee only paid the widow about $90 as her share as assignee. But it is shown she had paid, $70 to the trustee on account of one of the notes, which she was under no obligation to pay; and she ought to be re-imbursed that amount out of this fund. The trustee has retained the balance after paying the widow the $90. We think the cause should be retained and re *181 manded for settling the distribution of this balance. In the settlement she should be re-imbursed the $70, and then the half of what would remain of the $180 should go to her and the other half to the other claimants if they prove to be entitled, otherwise she should have it all. ' We affirm the decree below so far as it allows the sale to stand, but remand the cause to allow the parties thirty days-in which to apply for an accounting and proper distribution of the money. This is a trifling case, except to the parties, some of whom, except the complainant, are poor colored people, but we have examined it with as much care as if the parties were more important persons and the amount was a very large one.